## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHEILA DIANE ROYAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-0576-CVE-FHM |
| | ) | |
| RICKEY MOHAM, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1), filed

by Petitioner, Sheila Diane Royal, a state prisoner appearing pro se.  Respondent filed a response

(Dkt. # 8) and provided the state court records (Dkt. # 9) necessary for adjudication of Petitioner's

claims.  Petitioner filed a reply to the response (Dkt. # 10).  For the reasons discussed below, the

petition for writ of habeas corpus shall be denied.

### BACKGROUND

The facts of the case, as determined by the Oklahoma Court of Criminal Appeals (OCCA)

in an unpublished opinion, Case No. F-2010-99, are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner fails to make the necessary showing.

Therefore, the following factual summary by the OCCA is presumed correct:

> On June 29, 2007, three Tulsa police officers went to a house occupied by
> Royal and Darius Payne, her boyfriend and co-defendant, to execute an arrest
> warrant for Felix Oliver.  Several of Oliver's warrants listed the home's address and
> a car registered to Oliver was parked in front of the house.  Royal answered the door
> and told the officers that she did not know Oliver and he did not live there.  Payne
> came to the door within minutes, produced identification and reiterated to the officers
> that he did not know Oliver and that he was not inside.  Both Payne and Royal gave
> consent for the officers to look around the house to confirm the absence of Oliver.
> Payne led two of the officers into the master bedroom.  One of the officers looked

underneath the bed and saw a set of scales and baggies.  He looked around and saw rocks of cocaine base (known as crack cocaine) in plain view on the dresser and floor below it.  A baggie containing marijuana was also on the dresser.  The officer immediately arrested Payne and handcuffed him.  Before placing Payne on the bed to wait for the evidence to be recovered, one of the officers patted the bedcovers for safety reasons and felt a gun.  Underneath the blankets was a .380 Lorcin pistol, $5,154.00 in cash and more crack cocaine.  The officers collected the evidence from the bed and dresser.  No tax stamp was affixed to the crack cocaine.  The combined weight of the crack cocaine collected was in excess of five grams.

Dkt. # 8-3 at 2-3.

Based on those facts, Petitioner and Payne were charged, by Information, in Tulsa County District Court, Case No. CF-2007-3606, with Trafficking in Illegal Drugs [cocaine base a/k/a crack cocaine] (Count 1); Possession of a Firearm, After Former Conviction of a Felony (Count 3); Unlawful Possession of Controlled Drug [marijuana] – Second Offense [a felony] (Count 4); Failure to Obtain Drug Tax Stamp (Count 5); and Unlawful Possession of Paraphernalia (Count 6).  Id. at 1-2.  In addition, Payne was charged with Possession of a Firearm while in the Commission of a Felony (Count 2).  See http://www.oscn.net.  However, the State dismissed Count 2 on the first morning of trial.  Dkt. # 8-3 at 1 n.2.  Petitioner and Payne were tried jointly.  Id. at 2.

Because Count 2 was dismissed before the trial began, the remaining counts were renumbered and presented to the jury as Counts 1-5.  See Dkt. # 9-5, Tr. Vol. 1 at 6. In this Opinion and Order, the Court will refer to the counts as they were numbered in the Information, as set forth above.  For clarity of the analysis below, Count 1 is trafficking in cocaine base and Count 4 is unlawful possession of marijuana, a felony.

The trial judge trifurcated Petitioner's trial by jury.  Dkt. # 8-3 at 1.  During the first stage, the jury convicted Petitioner of Counts 1, 4, 5, and 6.  Id. at 1, 2.  During the second stage, the jury convicted Petitioner of Count 3.  Id. at 1 n.1.  The third stage "of the trial was devoted to considering

Royal's prior convictions for the purpose of sentence enhancement and fixing punishment." Id. "The jury found that Royal was an habitual offender . . . and enhanced her punishment." Id. at 1-2. The jury recommended a sentence of life imprisonment without the possibility of parole and a $25,000 fine for Count 1, five years imprisonment for Count 3, two years imprisonment for Count 4, four years imprisonment for Count 5, and one year in the county jail for Count 6. Id. at 2. On January 25, 2010, the trial judge sentenced Petitioner in accordance with the jury's recommendations, and ordered the sentences to be served concurrently with each other and consecutive to her sentence of twenty (20) years imprisonment, entered June 29, 2009, in Tulsa County District Court, Case No. CF-2008-4881, for possession of a controlled drug.[1]   See www.oscn.net.  Attorney Sharon K. Holmes represented Petitioner at trial.  See Dkt. # 8-3 at 17.

Petitioner filed a direct appeal with the OCCA (Dkt. # 8-1).  Represented by attorney Wyndi Thomas Hobbs, Petitioner raised the following propositions of error:

> Proposition I:     Convictions and sentences for both trafficking in cocaine base (Count 1) and failure to obtain a drug tax stamp for cocaine base (Count 5) violated Ms. Royal's rights to be free from double jeopardy (multiple punishment) under the Fifth and Fourteenth Amendments to the United States Constitution and Art. II, §§ 7 and 21, of the Oklahoma Constitution, and Okla. Stat. tit. 21, § 11 (2001).

> Proposition II:    The trial court directed a verdict of guilty for possession of marijuana – second offense on Count 4, in violation of Ms. Royal's due process and jury trial rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Art. II, §§ 7 and 20, of the Oklahoma Constitution.

---

[1]Payne was also convicted of Counts 1 and 3-6.  He received the same sentences as Petitioner, with all sentences ordered to be served concurrently with each other and consecutive to Payne's sentence of life imprisonment, entered April 27, 2009, in Tulsa County District Court, Case No. CF-2008-2688, for possession of controlled drug with intent to distribute, after former conviction of eight (8) felonies.  See www.osnc.net.

| Proposition III: | The trial court committed plain error by improperly bifurcating Ms. Royal's trial for Count 6, misdemeanor possession of paraphernalia, depriving her of her due process rights to a fair sentencing under the Fifth and Fourteenth Amendments to the U.S. Constitution and Art. II, § 7, of the Oklahoma Constitution. |
|---|---|
| Proposition IV: | Over Ms. Royal's objection, and absent any statutory ground, excusing prospective jurors Ross and Edwards for cause was error that essentially gave the prosecutor two additional peremptory challenges. |
| Proposition V: | The trial court abused its discretion by granting the state's request to make Ms. Royal wear a shock device during the trial, thus violating her rights to due process of law and a fundamentally fair trial secured to her by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as Article II, Sections 7 and 20 of the Oklahoma Constitution. |
| Proposition VI: | The judgment and sentence for Count 5 incorrectly recites that Appellant is convicted of failure to obtain tax stamp under Okla. Stat. tit. 68, § 450.1 instead of Okla. Stat. tit. 68, § 450.8. Also, the judgment and sentence on Count 6 incorrectly shows conviction of a felony. Therefore, this Court should direct the trial court to correct these errors nunc pro tunc. |
| Proposition VII: | The cumulative impact of errors deprived Ms. Royal [of] a fair trial. |

Id. In an unpublished opinion, filed October 21, 2011, in Case No. F-2010-99, the OCCA affirmed Petitioner's convictions, and rejected all claims except those made in Propositions III and VI (Dkt. # 8-3 at 17). Based on its findings, the OCCA modified Petitioner's sentence for misdemeanor possession of drug paraphernalia to three (3) months in the county jail, id. at 2, 11, and directed nunc pro tunc correction of Petitioner's Judgment and Sentence "to show a violation of 68 O.S.2001, § 450.8" and "to reflect conviction of a misdemeanor rather than a felony" as to Count 6, id. at 16.

4

On October 15, 2012, Petitioner filed her federal petition for writ of habeas corpus (Dkt. #

1).  Petitioner identifies four grounds of error, as follows:

Ground I:      Petitioner's constitutional right to be free of double jeopardy was violated when she was convicted of trafficking and failure to obtain tax stamp for cocaine base.

Ground II:     Trial court abused [its] discretion when it required petitioner to wear shock device.

Ground III:    Trial court directed the verdict of guilty violating petitioner's fundamental right to due process.

Ground IV:     Over defense objection trial court excused two jurist [sic] for cause allowing state two additional peremptory challenges.

Id. at 3-5, 7.  In response to the petition, Respondent argues Petitioner is not entitled to habeas corpus relief.  Dkt. # 8 at 21.

### *ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented all the claims found in Grounds I, II, III, and IV to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims Adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).  The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. (quoting Richter, 562 U.S. at 103) (internal quotation marks omitted); see Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

6

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

## 1. Ground I: Double Jeopardy

As her first ground of error, Petitioner argues that her convictions for both trafficking in cocaine base and for failure to affix a tax stamp to the same cocaine base violate the Double Jeopardy Clause of the United States Constitution. Dkt. # 1 at 3. In resolving this claim on direct appeal, the OCCA cited, inter alia, Dennis v. Poppel, 222 F.3d 1245, 1255 (10th cir. 2000), and concluded that the "Oklahoma legislature clearly intended the punishment for the statutory offense of failure to affix tax stamps to be in addition or cumulative to the punishment for the statutory trafficking offense found in the Oklahoma Uniform Controlled Dangerous Substance Act." Dkt. # 8-3 at 7. The OCCA ruled that, because the punishment was intended to be cumulative, there was no double jeopardy violation. Id.

The Double Jeopardy Clause protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). This protection is limited to ensuring "that the sentencing discretion of courts is confined to the limits established by the legislature," for it is the legislature that is vested with "the substantive power to prescribe crimes and determine punishments." Ohio v. Johnson, 467 U.S. 493, 499 (1984). Thus, when a course of criminal conduct violates two statutory provisions,

the test to determine whether the punishments are "multiple," in violation of the Double Jeopardy Clause, is "essentially one of legislative intent." Id.; see Missouri v. Hunter, 459 U.S. 359, 365-66 (1983). In the absence of clear legislative intent, courts must apply the Blockburger test, which provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).

Addressing Petitioner's claim on direct appeal, the OCCA cited White v. State, 900 P.2d 982 (Okla. Crim. App. 1995), and Dennis, 222 F.3d 1245, to support its holding that Petitioner's convictions under Oklahoma law for both trafficking and failure to affix a tax stamp did not constitute a double jeopardy violation. Dkt. # 8-3 at 6-7. In White, the OCCA summarily stated that "where a defendant is punished for both failing to pay a drug tax and committing a drug offense, all in the same proceeding, no Double Jeopardy problem exists," although it did not explicitly address the issue of legislative intent. White, 900 P.2d at 996.

In Dennis, the Tenth Circuit also addressed whether convictions for both trafficking and failure to affix a tax stamp under Oklahoma law was a violation of the Double Jeopardy Clause. Dennis, 222 F.3d 1245. Noting that no Oklahoma court had "ruled on the Oklahoma legislature's intent with respect to the two statutes at issue," id. at 1255, the Tenth Circuit found that "the legislature intended the punishment for the trafficking offense to be cumulative to the punishment for failing to affix a tax stamp" and held that there was no double jeopardy violation. Id. at 1256 (footnote omitted). Because its ruling was premised on legislative intent, the Tenth Circuit did not apply the Blockburger test.

8

This Court may not grant habeas corpus relief unless the OCCA's ruling was contrary to, or involved an unreasonable application of, clearly established federal law.  The Supreme Court has clearly established that "where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." Hunter, 459 U.S. at 368-69.  The OCCA determined that the Oklahoma legislature intended the punishments to be cumulative, and, therefore, the punishments did not violate the Double Jeopardy Clause.  This Court finds that the OCCA's ruling is neither contrary to, nor an unreasonable application of, clearly established federal law.  Therefore, Petitioner is not entitled to habeas corpus relief on this ground of error.

### 2.   Ground II: Shock Device

As her second ground of error, Petitioner alleges that the "[t]rial court abused [its] discretion when it required Petitioner to wear [a] shock device."  Dkt. # 1 at 4.  The OCCA found that the "record made here lacks the necessary factual justification sufficient to justify the district court's decision to order [Petitioner] restrained with a shock device in this case."  Dkt. # 8-3 at 15.  Even so, the OCCA declined to reverse Petitioner's conviction as "[Petitioner] neither allege[d] nor present[ed] evidence that the shock device was visible to the jury. . . . [or] interfered with her ability to participate in her trial or consult with counsel."  Id. at 15-16.  In her petition for a federal writ of habeas corpus, Petitioner alleges that the device was visible to the jury during her trial, stating:

> During trial petitioner wore a pant suit. The length of the pants extended to just over the collar of her shoes so that when she sat down the legs raised up revealing the shock device. It was in fact the obvious stares of two separate jurors on two separate occasions that brought awareness to the Petitioner at which time she pulled the pant leg down.

Dkt. # 1 at 5.

The Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination . . . that they are justified by a state interest specific to a particular trial" and that "due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." Deck v. Missouri, 544 U.S. 622, 629, 632 (2005). In examining whether the use of restraints violates due process, the Supreme Court repeatedly referenced "visible" restraints, see Deck, 544 U.S. 622 (referring to "visible" restraints ten times); see also Ochoa v. Workman, 669 F.3d 1130, 1145 (10th Cir. 2012) ("[I]t is the potential impact on the jury of *visible* restraints that implicates the fundamental fairness of a jury trial proceeding." (emphasis added)), and considered whether the restraints compromised the defendant's ability to participate in his or her own defense or communicate with counsel, see Deck, 544 U.S. at 631.

In her petition, Petitioner makes the unsupported allegation that the shock device may have been visible to the jury. Dkt. # 1 at 5. Even if Petitioner substantiated her allegation, however, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). The record before the OCCA on direct appeal contained no allegations that the jury could see the shock device, Dkt. # 8-3 at 15, and the OCCA found that Petitioner did not "allege or present evidence that the device interfered with her ability to participate in her trial or consult with counsel." Id. at 16. Petitioner

10

has failed to demonstrate that the OCCA's ruling was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Therefore, Petitioner is not entitled to habeas corpus relief on this ground of error.

### 3.    Ground III: Directed Verdict

As her third ground of error, Petitioner challenges the jury instructions, arguing that the trial court directed a verdict of guilty on the charge of Unlawful Possession of Controlled Drug [marijuana] – Second Offense, a felony, in violation of her due process rights.  Dkt. # 1 at 5.  In the "Supporting Facts" section under Ground Three of her reply to Respondent's response, Petitioner also argues that, in stage one of her trial, the jury "convicted her of a misdemeanor" (Unlawful Possession of Controlled Drug [marijuana]),[2] yet in stage three "[t]he jury was directed by the jury instructions to punish Petitioner for a [felony] she was not convicted of" (Unlawful Possession of Controlled Drug [marijuana] – Second Offense) in stage one.  Dkt. # 10 at 6.

The record reflects that, during the first stage of Petitioner's trial, the prosecutor read the Information to the jury.  See Dkt. # 9-5, Tr. Vol. 1 at 237-39.  The prosecutor read Count 4 as "Unlawful Possession of a Controlled Drug [marijuana], **a felony**."  Id. at 238 (emphasis added).  At the conclusion of the first stage, Petitioner was found guilty of the crime, as charged.  See Dkt. # 9-8, Tr. Vol. 4 at 193.  At the conclusion of the second stage of trial, Petitioner was found guilty of "possession of a firearm after former conviction."  See Dkt. # 9-9, Tr. Vol. 5 at 34.  During the third stage of trial, the jury learned that Petitioner had four prior convictions for possession of a controlled drug.  See id. at 55.  Those prior convictions were used for sentence enhancement.  At

---

[2]See Footnote 4, infra.

the conclusion of the third stage, the jury found Petitioner guilty of "unlawful possession of a controlled drug [marijuana], second offense, after one or more previous convictions." Id. at 80.

On direct appeal, Petitioner argued as follows:

> In Stage III, the State presented evidence that Ms. Royal had four prior drug-related convictions.  Ms. Royal's jury was never instructed that it must find any prior drug-related violation/conviction in order to convict or sentence her for felony possession of marijuana.   Instead the trial court directed a verdict for **felony** possession of marijuana in Stage III by providing the jury a verdict form entitled "Unlawful Possession of Controlled Drug – **Second Offense**" and a "choice" between "[g]uilty of the crime of Unlawful Possession of Controlled Drug – **Second Offense** after one (1) or more previous convictions," or "[g]uilty of the crime of Unlawful Possession of Controlled Drug – **Second Offense**."
> The jury verdict of guilty for a misdemeanor became a judicially directed verdict for a felony, despite the jury never having been instructed that finding a prior drug-related violation/conviction was a prerequisite to finding Ms. Royal guilty of and punishing her for felony possession of marijuana.

(Dkt. # 8-1 at 30 (emphasis in original, citations to record and footnote omitted)).  In other words, Petitioner argued that although the jury had convicted her of a misdemeanor[3] in the first stage of trial, the trial court proceeded in the third stage as if the jury had convicted her of a felony.

The OCCA denied relief on this claim.  Dkt. # 8-3 at 8-10.  Reviewing for plain error, the OCCA cited Gamble v. State, 751 P.2d 751 (Okla. Crim. App. 1988), and explained that the trial court properly bifurcated Count 4 as it is "reversible error to admit the defendant's prior conviction for marijuana possession in the first stage of trial because the prior conviction is not an element of the offense [of felony marijuana possession], but instead, [is] pertinent only for the purpose of enhancement of punishment."  Dkt. # 8-3 at 9 (alterations in original) (internal quotation omitted).

---

[3]As noted above, Count 4, Unlawful Possession of Marijuana – Second Offense, was charged as a felony.  Petitioner's confusion stems from the fact that the trial court properly excluded the prior convictions during the first stage of trial.  That exclusion did not transform the felony into a misdemeanor.

The OCCA noted that, during the first stage of Petitioner's trial, the jury did not hear any evidence regarding Petitioner's prior convictions and the trial court did not instruct the jury that it must find that Petitioner had a prior conviction as a it is "not an element of the offense." Id. at 8-9.  The OCCA emphasized that, while it is not an element of the offense, a prior conviction can be used to enhance punishment, and during the third stage of Petitioner's trial, the trial court instructed the jury on the range of punishment for possession of a controlled drug with and without a prior conviction. Id. at 9.  The OCCA concluded that the "bifurcation procedure . . . defeats [Petitioner's] claim that the trial court improperly directed a verdict on this charge" and the "wording of the trial court's instruction on punishment comported with similar enhancement instructions providing a range of punishment if prior convictions are proven and a range of punishment if prior convictions are not proven." Id.  The "instruction allowed the jury to decide" whether there had been a prior conviction and then set the punishment based on that determination.  Id. at 9-10.

"[E]rrors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and due process of law.'"  Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted).  To determine whether Petitioner was deprived of a fundamentally fair trial and due process of law, the Court must consider the jury instruction "in the context of the instructions as a whole and the trial record" and ask if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (internal quotation marks omitted) (citations omitted).

Oklahoma defines plain error as "an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense." Simpson v. State, 876 P.2d 690, 698 (Okla.

13

Crim. App. 1994), and "impinges on the fundamental fairness of trial." <u>Cleary v. State</u>, 942 P.2d 736, 753 (Okla. Crim. App. 1997).  Addressing Oklahoma's definition of plain error, the Tenth Circuit found that there was "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error 'so infused the trial with unfairness as to deny due process of law.'" <u>Thornburg v. Mullin</u>, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting <u>Estelle</u>, 502 U.S. at 75).  Therefore, when the OCCA applies the plain error standard of review, this Court must defer to its ruling unless it "unreasonably appli[ed]" the test. <u>Id.</u> (quoting 28 U.S.C. § 2254(d)).

Under the facts of this case, the Court cannot find that the OCCA unreasonably applied the plain error standard of review or that the language on the jury form allowed the trial court to either usurp the jury as trier of fact or direct a verdict of guilty on the charge of Unlawful Possession of Controlled Drug [marijuana] – Second Offense.  The two choices on the jury form allowed the jury to either find that there was a prior conviction or find that there was not a prior conviction.  The title of the form correctly identified the crime charged.  As discussed above, the State presented evidence during the third stage of trial that Petitioner had four prior convictions for possession of a controlled drug. <u>See</u> Dkt. # 9-9, Tr. Vol. 5 at 55.  When viewed in its entirety in conjunction with the evidence presented at trial, the Court cannot say that the language on the jury form rendered Petitioner's trial fundamentally unfair or that the OCCA unreasonably applied the plain error standard when reviewing this claim.   Petitioner is not entitled to habeas corpus relief on Ground III.

14

4.     **Ground IV: Panel members dismissed for cause**

As her fourth ground of error, Petitioner argues that the trial judge improperly dismissed two

panel members, L.R. and H.E., for cause, effectively giving the prosecution two extra peremptory

challenges. Dkt. # 1 at 7. As to panelist L.R., the OCCA found that:

> [S]he had an outstanding warrant for her arrest in relation to a misdemeanor case and
> an outstanding application to revoke a suspended sentence. It appears from the
> discussion on the matter that the warrant may have been issued in error. Regardless,
> the warrant had been issued and the trial court judge in this case was without the time
> and procedures to resolve the matter during the jury selection portion of Royal's trial.
> The pending criminal action and outstanding warrant against L.R. filed by the same
> district attorney's office involved in Royal's case called into question the panelist's
> fitness to serve and ability to be fair.

Dkt. # 8-3 at 11 (footnote omitted). The OCCA found that panelist H.E. was removed for cause

"because he failed to disclose prior convictions for driving under the influence." Id. at 12. Panelist

H.E. claimed he "was confused about the need for disclosure because the trial court judge asked

about crimes excluding traffic offenses." Id. Several other panelists disclosed convictions for

driving under the influence, and "[i]t was H.E.'s failure to disclose after other panelists had done

so that caused the trial court judge to question H.E.'s candor and fitness to serve and ultimately

excuse him for cause." Id. The OCCA concluded "that [Petitioner] has failed to show that she was

denied a fair trial or an impartial jury by the removal of these prospective jurors," id., and the trial

court did not abuse its discretion. Id. at 13.

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and

principles of due process, guarantee a criminal defendant in state court an "impartial jury." Ristaino

v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85

(1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the

community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986).  It is the trial judge's responsibility to "remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981).  In Oklahoma, the decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion. Powell v. State, 906 P.2d 765, 771 (Okla. Crim. App. 1995); Allen v. State, 862 P.2d 487, 491 (Okla. Crim. App. 1993); Workman v. State, 824 P.2d 378, 380 (Okla. Crim. App. 1991).  The OCCA will not overturn the trial court's decision unless an abuse of discretion is shown. Allen, 862 P.2d at 491; Simpson v. State, 827 P.2d 171, 175 (Okla. Crim. App. 1992).  The state court resolves all doubts regarding jury impartiality in a criminal case in favor of the accused. Simpson, 827 P.2d at 175.  A juror who cannot impartially decide guilt violates his oath and is the proper subject of a challenge for cause. Id.; Dutton v. State, 674 P.2d 1134, 1138 (Okla. Crim. App. 1984).

The Court agrees with the OCCA that the trial judge did not abuse his discretion in excusing panelists L.R. and H.E. for cause.  It was reasonable for the trial court judge to expect that the outstanding warrant and application to revoke a suspended sentence would be a distraction to panelist L.R. and to believe that having those outstanding matters brought by the same district attorney's office involved in Petitioner's trial may affect panelist L.R.'s ability to be fair.  It was also reasonable for the trial court judge to believe that panelist H.E.'s failure to come forward with information about his past convictions for driving under the influence, even after other panelists

16

disclosed similar convictions, called into question his candor and fitness to serve.  The trial court judge did not abuse his discretion and properly excused panelists L.R. and H.E. for cause.

Petitioner also alleges that by allowing these two panelists to be excused for cause, the State effectively gained two extra peremptory challenges.  Dkt. # 1 at 7.  The Supreme Court has long recognized that "peremptory challenges are not of constitutional dimension."  Ross, 487 U.S. at 88 (citations omitted) (finding no violation of the right to an impartial jury where trial judge's erroneous refusal to remove prospective juror for cause forced defendant to remove juror with a peremptory challenge thereby depriving defendant of full compliment of peremptory challenges provided under state law); see Rivera v. Illinois, 556 U.S. 148, 157 (2009) (stating that "[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern").  As explained in Ross, peremptory challenges "are a means to achieve the end of an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  Ross, 487 U.S. at 88 (citations omitted).

Also, as long as the jury that sits is impartial, the number of peremptory challenges resulting from a trial judge's allegedly erroneous ruling on a motion to dismiss for cause does not rise to the level of a constitutional violation.  United States v. Prati, 861 F.2d 82, 87 (5th Cir. 1988) (citing Ross and affirming defendant's conviction where trial judge's unintentionally erroneous removal of juror for cause resulted in extra peremptory challenge for the government).  Here, Petitioner does not assert that her jury was not impartial as a result of the dismissal of panelists L.R. and H.E. for cause, but only that the prosecution gained a "tactical advantage."  Dkt. # 1 at 8 ("Petitioner was not

prejudiced because of the removal of the jurors yet was prejudiced due to the result of removal [sic] gave the state an unfair advantage for more challenges."); Dkt. # 10 at 8. Thus, Petitioner's complaint that the State gained two peremptory challenges does not rise to the level of a constitutional violation. Petitioner has not demonstrated that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

On direct appeal, Petitioner, who is African-American, also alleged that "[Petitioner's] rights to due process and a fair trial" were violated because the dismissal of an African-American panelist, H.E., for cause "allowed the prosecutor to avoid justifying the use of a peremptory challenge with a race-neutral reason." Dkt. # 8-1 at 44. The OCCA did not provide an analysis of this issue, but nonetheless denied relief. Dkt. # 8-3 at 17. To the extent that Petitioner raises this claim in her petition for writ of habeas corpus, the Court can still examine the claim. Nothing in 28 U.S.C. § 2254(d)(1) "require[es] a statement of reasons," Harrington v. Richter, 562 U.S. 86, 98 (2011), and habeas courts can "determin[e] whether a state court's decision resulted from an unreasonable legal or factual conclusion . . . [without] an opinion from the state court explaining the state court's reasoning." Id.

Under Batson v. Kentucky, 476 U.S. 79 (1986), a prosecutor cannot "challenge potential jurors solely on account of their race," id. at 89, and, if challenged, the prosecutor must be able to "articulate a neutral explanation related to the particular case to be tried." Id. at 97-98. Batson applies to peremptory challenges and not challenges for cause. Id. at 89. The Supreme Court emphasized that "the prosecutor's explanation [for a race neutral peremptory challenge] need not rise to the level justifying exercise of a challenge for cause." Id. at 97 (citations omitted). As the standard for removing a juror for cause is even higher than that for removing a juror using a

18

peremptory challenge, Petitioner's rights to due process and a fair trial were not violated by the removal of panelist H.E. for cause. Therefore, Petitioner is not entitled to habeas corpus relief on this ground of error.

## C.  Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893, 907 n.4 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established she is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A certificate of appealability is **denied**.

3.      A separate judgment shall be entered in this matter.

**DATED** this 15th day of January, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE